UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAULA DAPSON,

                                        Plaintiff,                DECISION and ORDER

-vs-
                                                                  17-CV-6704 CJS
CITY OF ROCHESTER, NEW YORK,

                                        Defendant.
_____

## INTRODUCTION

Paula Dapson ("Plaintiff") brings this action complaining of employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").   Now before the Court is Defendant's motion (Docket No. [#15]) to dismiss the Second Amended Complaint, Plaintiff's cross-motion [#19] for leave to filed a Third Amended Complaint and Defendant's cross-cross motion [#20] to dismiss the proposed Third Amended Complaint.   Defendant's motion to dismiss the Second Amended Complaint is denied as moot, while Plaintiff's cross-motion and Defendant's cross-cross motion are both granted in part and denied in part.   The claims in the Third Amended Complaint are dismissed, except the retaliation claim insofar as it is based upon events occurring after June 7, 2016, the date Plaintiff filed her first EEOC complaint.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Second Amended Complaint and the proposed Third Amended Complaint.   In 2009, Plaintiff began her employment with the City of Rochester ("the City" or "Defendant") as an Evidence

Technician for the Rochester Police Department ("RPD"). Plaintiff was assigned to the RPD's Technical Unit, which was physically located in RPD Headquarters ("Headquarters"). The Supervisor of the Technical Unit was Sergeant Michael Coon ("Coon").

In July 2011, Plaintiff attended an out-of-state RPD training event, at which "several incidents" occurred involving an RPD Officer, Eluid Rodriguez ("Rodriguez"). The pleading does not specify what these were. However, upon returning to Rochester, Plaintiff felt that Rodriguez was "stalking" her, such as by "taking pictures of [her] without her knowledge," and engaging in other unspecified "grossly inappropriate behavior."

Plaintiff complained about Rodriguez's alleged stalking to the RPD, and on October 25, 2011, RPD Chief James Sheppard issued a letter to Rodriguez, indicating that Plaintiff had filed a sexual harassment complaint against him, and that he was required to "stay away from" her home, and "avoid any contact whatsoever" with her at work. In pertinent part, the letter stated:

> Ms. Paula Dapson, a civilian evidence technician on the first platoon alleges that during a two week period in July (8-23) you made unwanted sexual advances toward her, made unwanted sexual comments and displayed possessive behavior toward Ms. Dapson.
>
> You are ordered to stay away from the home of Ms. Dapson and avoid any contact whatsoever with Ms. Dapson at her place of employment, the Rochester Police Department Technician Unit. Additionally you are hereby ordered to refrain from communication by mail or by telephone, e-mail, voicemail, texting or any other electronic means with Ms. Dapson. You are ordered not to attempt to contact or have any communication with Ms. Dapson by way of a third party to include family, friends, neighbors or co-workers. You are also required to refrain from stalking, harassment, threats, intimidation or otherwise interfering with Ms. Paula Dapson.

Docket No. [#19-3]. In this action, both Plaintiff's counsel and Defendant's counsel refer to Sheppard's letter as a "no-contact order."

In addition to the "no-contact order," the RPD transferred Rodriguez "to a different shift and location than that of Plaintiff." Plaintiff alleges that such transfer was "per the terms of the [no-contact] Order," though the letter/order itself says nothing concerning Rodriguez's shift or work location.[1] Nevertheless, it appears that in response to Plaintiff's complaint, Rodriguez was assigned to work somewhere other than Headquarters.

In "late May, 2012," Rodriguez was transferred back to Headquarters, where he worked a shift that was "similar" to Plaintiff's shift. Rodriguez never had any communication or interaction with Plaintiff during this period. Nevertheless, Plaintiff viewed Rodriquez's presence at Headquarters to be a violation of the "no contact order," inasmuch as she felt she was forced to have "contact" with Rodriguez when she had "to walk by the Headquarters desk, located in the Public Safety Building ["(PSB")], to access her [police technician's] van." Plaintiff complained about Rodriguez's presence at Headquarters, whereupon RPD again transferred him to a different shift and work location.

However, Rodriguez still visited Headquarters at various times in connection with his police duties. In that regard, Plaintiff contends that "between the years 2012 and

---

[1]The Court "limit[s] itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," but does "not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *West v. Harkness*, Civ. No. 9:17-CV-621 (GTS/DJS), 2018 WL 3748344 at *2 (N.D.N.Y. May 29, 2018) (citations and internal quotation marks omitted). Although Plaintiff insists upon calling the letter an "order," that is a legal conclusion which the Court is not required to accept.

2015," she was "forced" to have "contact" with Rodriguez, insofar as she "would routinely cross paths with [him] in the Public Safety Building, or he would be working on the 4th floor holding areas in the PSB [Public Safety Building] located directly outside the technician unit where [she] worked." Plaintiff believes that those incidents were a violation of the "no contact order" issued in 2011.

In December 2015, the RPD promoted Rodriguez to the title of "Investigator,"[2] in which capacity he returned to work full-time at Headquarters on a shift that overlapped Plaintiff's shift by four hours. Rodriguez frequently was required to work overtime, however, so his shift would sometimes overlap Plaintiff's shift by as much as six or seven hours. Rodriguez never had any communication or interaction with Plaintiff during this period. Plaintiff, though, believed that Rodriguez's presence at Headquarters during his work shifts violated the 2011 "no contact order." Plaintiff complained to her union representative, who conveyed the complaint to Chief Sheppard. Plaintiff maintains, though, that her complaint was "completely ignored."

On February 2, 2016, Plaintiff came "face to face" with Rodriguez "while performing her expected duties of her job." The pleading does not expressly indicate where this encounter took place, but presumably it was at Headquarters. This was apparently the first time that Plaintiff and Rodriguez had seen each other "face to face" since the "no-contact" letter had been issued to Rodriguez more than four years earlier. Apparently, Rodriguez said nothing to Plaintiff, and went on his way. However, Plaintiff contends

---

[2] Second Amended Complaint [#11] at ¶ 25.

that she "immediately left the premises [(Police Headquarters)]" because she did not feel safe." Specifically, Plaintiff exited Headquarters and "sat in her technician van in a parking lot instead of her office, where she felt safer," until the end of her shift. Before leaving Headquarters to sit in her van, Plaintiff notified unspecified "appropriate personnel" that she was doing so. After her shift, Plaintiff once again lodged a complaint with her union representative concerning Rodriguez's presence at Headquarters.

Shortly thereafter, on February 10, 2016, Plaintiff "became the subject of an investigation [by the RPD] concerning her job performance." Plaintiff contends that prior to that date, the RPD had considered her work to be "exemplary."

Also, in February, 2016, Sergeant Coon, who, Plaintiff maintains is a friend of Rodriguez's, gave Plaintiff a "negative evaluation," indicating that she was "not able to get along with colleagues." Plaintiff contends that such evaluation was incorrect and unfair.

Plaintiff also alleges that Sergeant Coon began to exhibit "a pattern of micromanagement and scrutiny" toward her. The exact nature of this "micromanagement and scrutiny" is not alleged in the pleadings, but Plaintiff contends that it was retaliatory in nature, and caused her to experience depression, anxiety, fear and dread at the prospect of coming face to face with Rodriguez.

On March 15, 2016, Plaintiff was "reprimanded under the guise of 'performance issues.'" The pleadings provide no further details concerning this reprimand, but characterize it as a "completely frivolous and pre-textual disciplinary measure."

At around this same time, Plaintiff contends that she was "depriv[ed] of the opportunity to work discretionary overtime hours," while "similarly situated colleagues"

were allowed to work overtime. Plaintiff further contends that "Defendant" instructed her co-workers to "refrain from any unnecessary communication with [her]." Additionally, Plaintiff alleges that she was not offered "various training" opportunities, while "similarly situated colleagues" with "less seniority" were offered training opportunities that she had never received, such as training in "blood spatter" and "cell phone extraction."

Between April 12, 2016 and June 28, 2016, Plaintiff left work on sick leave, which she claims was necessitated by having to "deal with the stress, anxiety and trauma of the retaliation and hostile work environment Defendant had created for her."

On or about June 7, 2016, while apparently still on sick leave, Plaintiff filed a charge against the RPD with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation.[3]

On July 11, 2016, Plaintiff was interviewed by the RPD's Professional Standards Section concerning complaints that she had made about the aforementioned actions of Sergeant Coon. Following the interview, Plaintiff "heard nothing regarding any outcome of said interview and investigation."

On July 12, 2016, while working at a homicide scene Sergeant Coon told Plaintiff not to perform her usual evidence technician duties, and to stand in the middle of the crime scene.[4] Plaintiff refers to this incident as Coon "publicly kick[ing] [her] off a homicide scene in front of at least 30 people." Subsequently, and "during most of [the] last year of [her] employment," Coon did not allow Plaintiff to work at homicide crime

_____

[3] Docket No. [#1] at pp. 17-21.
[4] Indicating that Coon "humiliated Plaintiff in front of numerous officers" "by making her stand in the middle of the scene and telling her to refrain from conducting any work." Docket No. [#11] at ¶ 53.

scenes.   The pleadings do not allege the reason, if any, that Coon gave for this order. Rather, the pleadings assert that "there was no objectively valid reason" for Coon to have treated Plaintiff in that manner, and allege such treatment was in retaliation for Plaintiff's complaints about having to work in the same building as Rodriguez.[5]

Also, while Plaintiff was out of work on sick leave, Coon reassigned her technician's call number and vehicle number to other employees within the Technician's Unit.   Plaintiff contends that upon her return from sick leave, Coon assigned her a "floater number" that would have been unfamiliar to officers with whom she had previously worked.   Plaintiff contends that such a re-assignment was "unprecedented" and retaliatory.

Plaintiff also contends that after she returned from sick leave, Coon "all but ignored [her]," such as by "refusing to respond to [her] emails, or in many instances, to even speak with her."   Plaintiff maintains, though, that Coon "generally maintain[ed] civility and cordiality" with her colleagues.

On August 3, 2016, Coon "wrote up Plaintiff for an issue relating to evidence handling."   Plaintiff does not deny that she committed the infraction but contends that

---

[5]  The pleadings further allege, "upon information and belief," that Coon told unnamed colleagues that Plaintiff "could not be trusted."   However, since the pleadings do not explain the basis for Plaintiff's "information and belief," and since Plaintiff's remaining factual allegations do not provide any reasonable basis to think that such a statement was actually made, the Court does not accept it when considering the subject applications. *See, Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 16 (2d Cir. 2013)("While pleading on the basis of information and belief is generally appropriate where information is particularly within defendants knowledge and control, even such pleadings must be grounded in a good-faith basis in fact[.]") (citation and internal quotation marks omitted).

Coon did not write up other technicians for the same conduct. Plaintiff further contends that between August, 2016, and September, 2016, Coon unfairly scrutinized and questioned her requests for overtime, but did not do the same to other evidence technicians.

On August 14, 2016, (approximately five years after Plaintiff's initial complaint about Rodriguez), Rodriguez was temporarily promoted to a position "that would overlap with Plaintiff's shift such that they would have to work in close proximity with each other." The pleading does not explain what "close proximity" means in that regard. However, on September 6, 2016, Plaintiff and Rodriguez were both assigned to work at the same crime scene. Plaintiff later complained to her "commanding officer" about having to work with Rodriguez, but was told that "nothing could be done for her."

As a result, Plaintiff left work for a second period of sick leave, purportedly "to address the harmful effects upon her health as a direct result of [the] continued hostile work environment and retaliation."

On September 21, 2016, while Plaintiff apparently was still on her second period of sick leave, she learned that Rodriguez had again been promoted, and that his work shift would therefore necessarily overlap her usual shift.[6] Allegedly in response to learning of this news, Plaintiff notified the RPD that she considered herself to have been constructively discharged, and stopped attending work. In particular, Plaintiff wrote a

_____

[6]The pleadings' allegation in this regard is confusing, since it contends that Rodriguez was promoted to the position of "Investigator" in September, 2016, while having previously alleged that he was promoted to that position in December, 2015. Compare, Second Amended Complaint [#11] at ¶ ¶ 25 & 77, and proposed Third Amended Complaint at ¶ ¶ 27 & 79.

letter "To whom it may concern," indicating that she felt she had been constructively discharged for two reasons: 1) she "did not feel safe at work" due to Rodriguez's presence at Police Headquarters; and 2) she could no longer tolerate a retaliatory hostile working environment. [7] Plaintiff maintains that her "constructive discharge" was itself discriminatory, since she was treated "worse than similarly situated male colleagues." Following such notice and Plaintiff's decision not to return to work, she received a final paycheck, though she contends that Coon improperly deducted 30 minutes of pay from the check, after falsely asserting that she had left 30 minutes early from her final shift.

On December 1, 2016, Plaintiff executed a second EEOC complaint, alleging that she experienced retaliation after she returned from her first period of sick leave on June 28, 2016.

In or about February, 2017, Plaintiff discovered that "documents relating to her [EEOC] claims were made publicly available on the internet by the City of Rochester."[8] Plaintiff contends that the information appearing on the internet included her home address, social security number and date of birth. Plaintiff indicates that her attorney sent a "cease and desist letter" to the City of Rochester, and the City of Rochester responded by acknowledging that certain information about Plaintiff's complaints had been "accessible via a google search," but that "Google Incorporated [had been] contacted and the material [had been] removed."

On July 17, 2017, the EEOC issued Plaintiff a right-to-sue letter. On October 11,

---

[7] Constructive Discharge letter, Docket No. [#3-2], Amended Complaint, Ex. B.
[8] Proposed Third Amended Complaint [#19-2] at ¶ 87.

2017, Plaintiff commenced this action.   On February 15, 2018, Plaintiff filed the Second Amended Complaint, which, based on the facts set forth above, purports to assert the following causes of action: 1) retaliation in violation of Title VII and the NYHRL; 2) hostile work environment in violation of Title VII and the NYHRL; and 3) "Sex Discrimination (Gender)" in violation of Title VII and the NYHRL.

On March 16, 2018, Defendant filed a motion [#15] to dismiss the Second Amended Complaint, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").   Regarding the alleged hostile work environment, Defendant contends that the allegations fail to plausibly allege either the existence of a hostile work environment or a basis to impute liability to the City of Rochester.   Regarding the alleged retaliation, Defendant asserts that Plaintiff has not plausibly pled a retaliatory adverse employment action or a causal connection between any complaint that she made and the alleged retaliatory acts.

On May 17, 2018, Plaintiff filed a response [#17] which generally asserts that the pleading more-than-adequately states claims for a hostile work environment and retaliation.

On November 15, 2018, counsel for both parties appeared before the undersigned for oral argument.   During that appearance, the Court questioned whether the RPD's alleged failure to enforce the "no contact" requirement between Plaintiff and Rodriguez could constitute a hostile work environment under Title VII.   In that regard, the Court remarked that it seemed absurd for Plaintiff to assert that Rodriguez, a sworn policeman, would be unable to come into Police Headquarters simply because Plaintiff might see him

there.   The Court further indicated that an employer's failure to follow its own internal procedures (referring to the RPD's alleged failure to enforce the no-contact order) by itself was insufficient to establish a hostile work environment.   In response, Plaintiff's counsel responded that, "there is no doubt, Your Honor, that this claim is first and foremost a *retaliation* claim." (emphasis added).

The Court, though, questioned whether Plaintiff's complaints about the alleged failure to enforce the no-contact order qualified as protected activity under Title VII. Plaintiff's counsel responded that he believed it did qualify as protected activity, since the no-contact order dealt with a complaint of sexual harassment.   Specifically, the exchange was as follows:

THE COURT: It's got to be protected activity.

PLAINTIFF'S COUNSEL: Well, complaining about the violation of the no-contact order, even if its deemed overly sensitive by the Court or anyone else, is in fact a protected activity and is a lawful act on her part.

THE COURT: But, how do we define protected activity?

PLAINTIFF'S COUNSEL: Well, in this case I think complaining about –

THE COURT: I'm not asking in this case.   What's a protected activity?   If I go and complain that I don't like Mr. Ash's [Defense Counsel] shirt and I'm retaliated against for that, is that a protected activity?

PLAINTIFF'S COUNSEL:   Your Honor, that's a great question, and no, I think that the facts of this case though do contemplate the kind of protected activity that the law –

THE COURT: Here's what I'm proposing: If the police department's failure to follow its internal procedures is not the basis for a hostile work environment claim, would

complaining about something that's not a hostile work environment be a protected activity?

PLAINTIFF'S COUNSEL: I think so, Your Honor. I think that complaining about a no-contact order that had not expired, that is not alleged by my counterpart to have expired, which dealt with allegations of sexual harassment [is protected activity].

The Court observed that Plaintiff's counsel kept referring to a document (the no-contact order) that had not been filed or submitted to the Court. In response, Plaintiff's counsel requested a further opportunity to amend the Complaint, to include the no-contact order.[9] Defendant's counsel objected to that request. However, the Court granted Plaintiff an opportunity to make the application and granted Defendant an opportunity to respond.

On December 6, 2018, Plaintiff filed a motion [#19] for leave to file a Third Amended Complaint. The proposed pleading does not comply with Rule 15(b) of the Local Rules of Civil Procedure, which requires that "the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings that are visible in both electronic and paper format." That is, the proposed pleading does not indicate what changes were made to the prior pleading. However, an affirmation [#19-1] submitted by Plaintiff's counsel with the motion indicates that there are essentially two changes in the proposed pleading: 1) the inclusion of the "no-contact order"; and 2) the inclusion of allegations that Defendant "published private and confidential information about Plaintiff

---

[9] Counsel also requested the opportunity to add allegations that Defendant had retaliated against Plaintiff by making her personal information available on the internet. Such allegation had been included in the original Complaint, but had been left out of the Second Amended Complaint due to an oversight, according to Plaintiff's counsel.

on its website as retaliation for [Plaintiff] opposing discrimination and harassment in the workplace."

On December 12, 2018, Defendant opposed the proposed amendment as futile. Defendant generally reiterates the same arguments that it made in support of the motion to dismiss the Second Amended Complaint. For example, Defendant contends that the proposed pleading fails to plausibly allege "any correlation" between the alleged retaliation and Plaintiff's complaints about Rodriguez, and that none of the alleged retaliation amounts to an "adverse employment action" in any event.

Further, with regard to the alleged retaliatory publication of Plaintiff's personal information on the internet, Defendant contends that Plaintiff has not plausibly alleged, and has no evidence, that RPD was responsible for her information being made available. In that regard, Defendant indicates that such information was possessed by others, including Plaintiff's own attorneys. Additionally, Defendant contends that the printed information attached to the proposed Third Amended Complaint, which purports to be what was found on the internet, was not obtained via Google, as Plaintiff maintains, but rather was obtained by someone within the RPD, "with login privileges." Indeed, Defendant contends that the information contained within those printed pages indicates that they were printed by Plaintiff herself, "using her unique access to RPD files," and that she has submitted "fabricated evidence" "as proof of retaliation."[10]

As for the hostile environment claim, Defendant contends that the proposed Third

---

[10] Docket No. [#20-1] at p. 11.

Amended Complaint still fails to state a plausible claim.   Finally, Defendant contends that

to the extent Plaintiff is alleging that she was treated differently than similarly-situated

male employees, her allegations are not plausible.

On December 17, 2018, the Court issued an Order [#21] indicating that all briefing

was now closed and that it would issue a written decision at its earliest opportunity.

## DISCUSSION

Where, as in this case, a court has before it both a motion to dismiss and a cross-

motion to amend, it "has a variety of ways in which it may deal with the pending motion

[to dismiss,] from denying the motion as moot to considering the merits of the motion in

light of the amended complaint." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 80 (D.

Conn. 1994).   Here, since the "futility" standard for proposed amended pleadings is the

same as the Rule 12(b)(6) standard,[11] the Court will simply consider the merits of

Defendant's motion [#20] directed at the Proposed Third Amended Complaint.

### 12(b)(6) Motion

In that regard, the legal standards to be applied on a motion to dismiss pursuant

to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to
> state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,
> 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is
> facially plausible "when the plaintiff pleads factual content that allows the

---

[11]Pursuant to Fed.R.Civ.P. 15, a court should "freely" give leave to amend, "when justice so requires."   However, a court may deny leave to amend for any number of "good reason[s], including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted).   "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."   *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished, citation omitted).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint,[12] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

<u>Title VII & NYHRL</u>

Plaintiff is asserting claims for sex-based discrimination (disparate treatment), hostile work environment and retaliation under both Title VII and NYHRL. When

---

[12]The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

considering claims of sex discrimination under these two statutes, the analysis is generally identical. *See, Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n. 9 (2d Cir. 2008) ("We typically treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims."), as amended (Apr. 22, 2008).

Disparate Treatment

Defendant first contends that the pleading fails to state an actionable claim for sex discrimination based on disparate treatment,[13] and the Court agrees.

"To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing the more favorable treatment of employees not in the protected group, who are similarly situated in all material respects.   Whether the plaintiff and these comparator employees are similarly situated in all material respects will vary from case to case, and while the plaintiff's and comparator's circumstances must bear a reasonably close resemblance, they need not be identical." *Carris v. First Student, Inc.*, 15-3350, 682 F. App'x 30, 32 (2d Cir. Mar. 8, 2017) (citations and internal quotation marks omitted).

Here, Count III of the Proposed Third Amended Complaint purports to state a claim for "Sex Discrimination (Gender)," on the grounds that "Plaintiff's male counterparts were treated more favorably than she in terms and conditions of employment."[14]   In particular, Count III of the pleading vaguely asserts that

Plaintiff, a female employee and victim of sexual harassment, was subjected to several instances of disparate treatment as compared to male counterparts, in

---

[13] Def. Memo of Law [#20-1] at pp. 14-15.
[14] Docket No. [#19-2] at p. 20, Count III.

terms of *training*, *assignments*, and *overtime*, as delineated in the Complaint.

Proposed Third Amended Complaint [#19-2] at p. 20 (emphasis added). However, the pleading does not allege any facts suggesting that Plaintiff was treated less-favorably than similarly-situated *males* with regard to training, assignments or overtime. Rather, the pleading alleges that in those aspects of her employment Plaintiff was treated less-favorably than her *co-workers generally, and without regard to sex,* due to *retaliation* after she complained about Rodriguez.[15]

For example, paragraph 48 of the pleading states: "Defendant also retaliated against Plaintiff by depriving her of the opportunity to work discretionary overtime hours, notwithstanding that her similarly situated colleagues enjoyed said benefit."[16] Clearly, there is no mention of the sexes of the alleged similarly-situated colleagues, and no assertion that the difference in treatment was due to Plaintiff's sex. Similarly, paragraph 52 of the pleading alleges that Plaintiff was retaliatorily denied training offered to "similarly situated Technicians," without referencing the sexes of those technicians. As for "assignments," the pleading asserts only that Plaintiff was prevented from working on homicide crime scenes due to retaliation; there is no factual allegation that Plaintiff received work assignments that were less-favorable than those given to similarly-situated male co-workers.

---

[15] Indeed, the pleading expressly states, though in a bald assertion, that Plaintiff was treated less-favorably than male counterparts "[a]s a result of having complained about sexual harassment, and Defendant's repeated forced violation of a No Contact Order." Proposed Third Amended Complaint at p. 20.

[16] *See also, id.* at ¶ 65 ("*Other technicians* were permitted large amounts of overtime, such that Plaintiff was deprived of an amount of money to be determined at or before trial as direct and proximate result of the *retaliation* described.") (emphasis added).

The only allegation even approaching a claim of sex-based disparate treatment involves Plaintiff's alleged constructive discharge, and in particular, states:

> Plaintiff was constructively discharged from her position because her working conditions were made so intolerable and unreasonable as to leave her no real choice but to resign. She alleges hereby that said treatment was not directed toward any male colleagues, and that the allegations contained herein are – in addition to other motivations alleged herein – tantamount to sex discrimination insofar as Defendant treated Plaintiff worse than similarly situated male colleagues in a manner to be proven at or before trial.

Proposed Third Amended Complaint at ¶ 81. However, this bald and conclusory assertion is insufficient to state a disparate-treatment claim on the basis of sex. The pleading does not plausibly allege that Plaintiff was treated less-favorably than any similarly-situated male employee[17] with regard to constructive discharge or any other aspect of her employment.

For all of the foregoing reasons, Count III of the Proposed Third Amended Complaint ("Sex Discrimination (Gender)") is dismissed for failure to state an actionable claim.

<u>Discriminatory Hostile Work Environment</u>

Defendant next contends that the Proposed Third Amended Complaint fails to state an actionable claim for a sex-based hostile work environment. The Court agrees, for the same reasons to which it alluded during oral argument.

---

[17] It seems unlikely that such a comparator exists. There simply is no factual support for the idea, nor does it seem reasonable to suppose, that a male employee of the RPD, or indeed, even another female one, ever found himself or herself in a situation "reasonably close" to Plaintiff's, since her situation arose from her peculiar and subjective interpretation of the no-contact order to mean that a fellow employee was prohibited from entering Police Headquarters for the rest of his career, during any shift in which she was working.

"Claims based on a hostile work environment require the plaintiff to plead facts that demonstrate (1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Chick v. Cty. of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013) (citation and internal quotation marks omitted).

During oral argument, and in response to the Court's questions, Plaintiff's counsel agreed that Plaintiff's hostile environment claim is based upon the RPD's failure to follow its own internal procedures, meaning its failure to enforce the "no contact order," as opposed to anything that Rodriguez did. Plaintiff contends that RPD's action or inaction in this regard created a hostile work environment, even though it is undisputed that Rodriguez never did or said anything to Plaintiff after the issuance of the "no contact order" in 2011. In this regard, Plaintiff maintains that the hostile environment consisted of her having to work "in proximity" to Rodriguez, meaning in the same building as him, which resulted in her having to walk near where he was working, and which also resulted, on one occasion, of seeing him "face to face."

"Title VII does not convey upon an employee the absolute right to demand that a workplace dispute be resolved in a way that is most attractive to her," but rather, "Title VII simply requires that the remedial action taken be reasonably calculated to end the sexual harassment." *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000). For example, Title VII does not require employers to fire harassers. *See, e.g., Cooper Tire & Rubber Co. v. Nat'l Labor Relations Bd.*, 866 F.3d 885, 892 (8th Cir. 2017) (Citing

*Bailey v. Runyon*, 167 F.3d 466, 468 (8th Cir. 1999) for the proposition that "Title VII does not require an employer to fire a harasser.... Rather, what an employer must do is to take prompt remedial action reasonably calculated to end the harassment."); *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *9 (D. Conn. Dec. 4, 2015) ("Title VII does not require that an employer fire all the 'Archie Bunkers" in its employ[.]").

Nor does Title VII require employers to banish harassers from the workplace. *See, Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 750 (6th Cir. 2008) ("Although Mullins argues that she complained after her initial meeting with Human Resources, the only incidents mentioned in her brief involve Parker's *presence in the bead area, not his conduct*. Goodyear had a duty to take reasonable measures to prevent continuing sexually harassing conduct, but Title VII did not require it to ensure that Mullins and Parker were separated at all times.") (emphasis added); *see also*, *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 406 (E.D.N.Y. 2016) (The defendant employer's failure to adjust the plaintiff's schedule so that she did not have to work with her former harasser was not an adverse employment action) (collecting similar cases).

In the instant case, Plaintiff does not allege that Rodriguez harassed her in any way after 2011. Nor does Plaintiff allege that Defendant's response to her 2011 harassment complaint was unreasonable. Any such contention would be implausible in any event, since it seems clear from the pleading that Defendant's response effectively addressed and stopped the alleged harassment by Rodriguez. In sum, to the extent that Plaintiff's hostile-environment claim is based on the RPD's failure to address the alleged

harassment in 2011 in the precise manner that she wanted (permanent banishment of Rodriguez from Police Headquarters during her working hours), the pleading fails to state an actionable claim.

Plaintiff, though, contends that the RPD failed to enforce the "no contact order," which thereby violated rights afforded to her under the agreement, which in turn created a hostile work environment under Title VII. In this regard, Plaintiff's hostile work environment claim is more akin to a claim for breach of contract: She believes that the "no contact order" bestowed on her the right not to ever have to work in the same area, or at the same time, as Rodriguez. On this point, during oral argument, the following exchange took place:

> THE COURT: You're saying that somehow because the police department -- I'm trying to piece together your argument -- violated their internal policy, that that somehow created a hostile environment?

> PLAINTIFF'S COUNSEL: Yes, Your Honor, I believe that the no contact order had no expiration date, and to the extent that Defendant knowingly put my client in close proximity to her alleged perpetrator she was forced to work in a very, very subjectively and, I think, objectively, unpleasant environment. So, I think that's accurate, Your Honor.

However, Plaintiff's theory in that regard is not actionable.

Initially, there is no indication that the "no contact order," consisting of a letter addressed solely to Rodriguez, afforded Plaintiff any particular rights. The letter does not indicate that Rodriguez can never be in the same work location as Plaintiff, and certainly does not indicate that Plaintiff can never enter Police Headquarters at any time while Plaintiff was working there. Rather, as noted earlier the no-contact order merely

directs Rodriguez that he is to have "no contact" with Plaintiff at work. Indeed, the express wording of the order belies the interpretation given to it by Plaintiff, since it directs Rodriguez to "stay away" from Plaintiff's home altogether, while only directing him to avoid contact with her at her workplace: "You are ordered to *stay away from the home of Ms. Dapson* and *avoid any contact whatsoever with Ms. Dapson at her place of employment*, the Rochester Police Department Technician Unit." Therefore, contrary to what Plaintiff may believe, the "order" did not require Rodriguez to "stay away" from Plaintiff's place of employment. Accordingly, the fact that Defendant permitted Rodriguez to enter Police Headquarters during Plaintiff's working hours was not a violation of the no-contact order.

Moreover, even assuming *arguendo* that Defendant failed to properly implement the no-contact order, as Plaintiff maintains, such fact by itself does not plausibly allege a hostile work environment under the facts alleged here. *See, Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) ("[F]ederal] courts (including district courts in this circuit) appear to have uniformly rejected the notion that a failure adequately to remediate sexual harassment itself constitutes an act that may contribute to a hostile work environment claim.") (citations omitted).

Finally, Plaintiff also alleges that she suffered a hostile work environment due to the alleged acts of retaliation that she experienced. In other words, Plaintiff contends that the alleged acts of retaliation by Sergeant Coon created both a claim for retaliation and a separate claim for hostile work environment. In that regard, the pleading expressly alleges that Defendant's motivation in creating the alleged hostile work environment was

to retaliate against Plaintiff.[18]

However, the alleged retaliatory hostile work environment does not create two separate claims, as Plaintiff suggests, but, rather, the retaliatory hostile environment, if established, is an element of a retaliation claim. Courts in this Circuit recognize that an employer's creation of a retaliatory hostile work environment may constitute an "adverse employment action" for purposes of a retaliation claim. That is, a retaliatory hostile work environment may establish one element of a retaliation claim, namely, that the plaintiff suffered an adverse employment action.[19] To be actionable, Plaintiff must still plausibly allege the other elements of a retaliation claim, such as a causal connection between the alleged retaliatory hostile work environment and protected activity under Title VII.[20]

---

[18] *See, e.g.*, Proposed Third Amended Complaint at ¶ 35 ("Defendant then began a pattern of micromanagement and scrutiny of Plaintiff's performance that was in itself tantamount to a hostile work environment[, in addition to being] motivated by retaliatory animus toward Plaintiff, after she had complained of discrimination, sexual harassment, and violations of the No Contact Order."); *see also, id.* at ¶ ¶ 42-43 ("Said investigation was Defendant's not-so-subtle method of retaliating against Plaintiff . . . . The foregoing investigation was [also] a continuation of the hostile work environment Paula Dapson was experiencing, and was in retaliation for her lawful complaints about Defendant's violation of the No Contact Order[.]")

[19] *See, Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 55 (2d Cir. 2018) ("To show an adverse employment action in the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in the retaliation context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citation and internal quotation marks omitted), *cert. denied*, No. 18-624, 2019 WL 113189 (U.S. Jan. 7, 2019)

[20] *See, e.g., Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 244 (E.D.N.Y. 2015) ("Bacchus's retaliatory hostile work environment claim fails for the same reason as her Title VII and NYSHRL retaliation claims fail, i.e., an insufficient showing as to causation."); *see also, Coleman v. City of Irondale*, No. 2:15-CV-01019-SGC, 2017 WL 4099881, at *11 (N.D. Ala. Sept. 15, 2017) ("Coleman's retaliatory hostile work environment claim suffers from the same flaw fatal to his other retaliation claims; there is no causal connection between any allegedly adverse employment action and Coleman's protected activities."); *see also, Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) ("Román alleges that she was subjected to an abusive working environment in retaliation for having engaged in protected activity by complaining of discrimination. This claim differs from the more typical claim of *discriminatory* hostile work environment, for which a plaintiff alleges that she has been subjected to an abusive working environment based on her membership in a protected class.") (emphasis in original).

Accordingly, the alleged retaliatory hostile work environment claim is an aspect of Plaintiff's retaliation claim, which the Court will address separately below.[21]

For all of the foregoing reasons, the Proposed Third Amended Complaint fails to state any actionable stand-alone claim for a sex-based discriminatory hostile work environment, under either Title VII or the NYHRL. This includes the aspect of Plaintiff's constructive-discharge claim that is based on Rodriguez's presence at Headquarters.[22]

Retaliation

As noted earlier, Plaintiff alleges that in response to her complaints about discrimination, Defendant committed various retaliatory acts against her, which had the cumulative effect of creating a hostile work environment and resulted in her constructive discharge. Generally,

> [t]o plead a retaliation claim under Title VII, a plaintiff must allege: (1) participation in a protected activity; (2) that the employer knew of her participation in that protected activity; (3) that she suffered an adverse employment action; and (4) that there exists a causal relationship between the protected activity and the adverse employment action. To show an adverse employment action in the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in the retaliation context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Trivial harms or petty slights or minor annoyances do not constitute materially adverse employment action.

---

[21] *See, e.g., Massaro v. Dep't of Educ. of City of New York*, No. 17 CIV. 8191 (LGS), 2018 WL 4333989, at *3 (S.D.N.Y. Sept. 11, 2018) ("Plaintiff's retaliatory hostile work environment claim and retaliatory constructive discharge claim are dismissed because the Complaint fails to plead sufficient facts to show a plausible causal connection between Plaintiff's protected activity and the allegedly retaliatory actions."); *see also, Rebele v. Potter*, 818 F. Supp. 2d 534, 539 (E.D.N.Y. 2011) ("When dealing with a claim for constructive discharge resulting from retaliation, actual retaliation is a necessary predicate.") (citation and internal quotation marks omitted).

[22] As previously stated, Plaintiff indicates that she was constructively discharged for two reasons: She did not feel safe at work due to Rodriguez's presence, and she felt she was the subject of a retaliatory hostile working environment.

*Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x at 55 (citations and internal quotation marks omitted).

In this action, the allegations of retaliation can be summarized as follows: That between 2012 and 2015, Rodriguez was present at Headquarters at various times, which was a violation of the no-contact order and constituted retaliation against Plaintiff; that in 2015, Rodriguez began working a shift at Headquarters that partially overlapped Plaintiff's shift; that in December, 2015, Plaintiff complained about Rodriguez's presence at headquarters, but her complaint was ignored; that in February, 2016, Plaintiff saw Rodriguez face-to-face at headquarters, whereupon she complained and left the premises to sit in her technician's van; that shortly thereafter Plaintiff's job performance was scrutinized, and she received a performance evaluation that indicated she did not get along well with co-workers; that in March, 2016, Plaintiff was reprimanded for unspecified "performance issues"; that around this same time Plaintiff was denied training and opportunities to work overtime; that on June 7, 2016, Plaintiff filed an EEOC complaint alleging retaliation; that in or about June, 2016, while Plaintiff was on sick leave, Coon reassigned her technician call number and vehicle number to other employees within the Technician's Unit; that on July 12, 2016, Plaintiff was directed not to collect evidence at a crime scene and to stand in place, which caused her embarrassment; that subsequently Plaintiff was not assigned to work at homicide crime scenes; that Sergeant Coon gave Plaintiff the cold shoulder; that Coon scrutinized Plaintiff's requests for overtime more thoroughly than requests submitted by other technicians; that on August 3, 2016, Coon

reprimanded Plaintiff for mishandling evidence; that after Plaintiff gave notice that she was not returning to work, due to being constructively discharged, Coon deducted thirty minutes from her final paycheck; that in December, 2016, Plaintiff filed a second EEOC complaint; and that in February, 2017, Plaintiff discovered that personal information about her dispute with the RPD, including personally identifying information, could be accessed via the internet.

Defendant contends that such facts do not plausibly plead an actionable claim for retaliation. Defendant first asserts that Plaintiff has not pled any retaliation between 2011 and 2015. Defendant further argues that as to the alleged retaliation in 2016, Plaintiff has not plausibly alleged a causal nexus between her complaints and the alleged retaliatory acts. Rather, Defendant contends that it is more plausible that the alleged retaliatory acts were the result either of Plaintiff's own deficient job performance or the fact that was out on sick leave for lengthy periods. Defendant also indicates that Plaintiff has not plausibly alleged that Sergeant Coon was aware of her complaints. Further, Defendant contends that the allegations concerning the particular retaliatory acts are conclusory, and that in any event the alleged retaliatory acts are not sufficiently adverse to support a retaliation claim. And, finally, Defendant contends that Plaintiff has not plausibly alleged that Defendant was responsible for the alleged dissemination of her personal information on the internet.

Before addressing Defendant's arguments, the Court returns to an issue that it raised during oral argument, namely, whether Plaintiff's complaints qualify as protected

activity under Title VII.[23]   In this regard, the pleading alleges that Plaintiff made five complaints:   1) the initial complaint about Rodriguez's stalking in 2011; 2) a complaint about Rodriguez's presence at Headquarters in December, 2015; 3) a complaint about the alleged non-enforcement of the no-contact order in February, 2016; 4) an EEOC complaint in June, 2016; and 5) an EEOC complaint in September, 2016.

Of these, Plaintiff acknowledged during oral argument that the initial complaint in 2011 is not a basis for the retaliation claims in this action.[24]   That complaint can therefore be disregarded.   Similarly, the Complaint in December, 2015, may be disregarded since Plaintiff does not allege that she suffered any particular retaliation as a result of it; to the contrary, she alleges that the complaint was ignored.[25]

As for the third complaint, in February, 2016, the Court finds as a matter of law that it does not qualify as protected activity under Title VII.   As noted above, during oral argument Plaintiff's counsel asserted that "complaining about the violation of the no-contact order, *even if its deemed overly sensitive by the Court or anyone else*, is in fact a protected activity." (emphasis added).   The applicable law, however, is as follows:

> An employee's complaint may qualify as protected activity ... so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.   *And not just any law—the plaintiff is required to have had a good faith, reasonable belief that she was opposing an*

---

[23]  The Court believes that it is proper to address this issue since, as shown above, Plaintiff clearly had notice of the Court's concern on this point and an opportunity to address the issue.   Indeed, at oral argument Plaintiff requested an opportunity to further amend the pleading specifically in response to the Court's inquiry as to whether Plaintiff's complaints were protected activity.

[24]  During oral argument, the Court asked Plaintiff's counsel to name the protected activity upon which the claim was based, and he indicated that it began with the complaint in February 2016.   In any event there is no plausible causal nexus alleged between the 2011 complaint and the alleged retaliatory acts in this case.

[25]  Proposed Third Amended Complaint at ¶ ¶ 33-34.

> *employment practice made unlawful by Title VII.* The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances. A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form.

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14–15 (2d Cir. 2013) (emphasis added, citations omitted).

> Mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith. Therefore, an employee lacks a reasonable belief that he is opposing an unlawful employment practice if the opposition is directed at something ... that is not properly within the definition of an unlawful employment practice.

*Pierre v. FJC Sec. Servs., Inc.*, No. 15-CV-4627 (MKB), 2017 WL 4162304, at *6 (E.D.N.Y. Sept. 19, 2017), *aff'd*, 723 F. App'x 70 (2d Cir. 2018).

Here, Plaintiff complained in February, 2016, because she believed that the no-contact order prevented the RPD from allowing Rodriguez, during the remainder of his career, to work at Headquarters during any shift in which she was working. However, as already explained above, Plaintiff's belief on that point was contrary to the actual wording of the no-contact order, and an unreasonable interpretation. Plaintiff did not have an objectively reasonable belief that she was complaining about discrimination prohibited by Title VII. The February, 2016, complaint was not protected activity under Title VII. Consequently, the alleged retaliation that Plaintiff claims to have experienced between February, 2016, and June, 2016, is not actionable, since it was not preceded by, or causally related to, protected activity.[26]

---

[26] Even assuming *arguendo* that the February, 2016, complaint was protected activity under Title VII, the pleading still does not plausibly allege that the disciplinary action Plaintiff faced immediately thereafter

This leaves only the last two complaints, both of which were made to the EEOC. As for those, the Court is not prepared to say at this time, as a matter of law, that they were not protected activity. Notably, those complaints were not the subject of the Court's discussion of protected activity during oral argument. Further, those complaints, unlike the February, 2016, complaint, did not merely allege a failure to enforce the no-contact order. Instead, both the June, 2016, EEOC complaint and the September, 2016, EEOC complaint alleged retaliation. In particular, Plaintiff alleged that almost immediately after she complained about what she believed to be discrimination, she perceived various changes in her working conditions and in her supervisor's treatment of her. Even though the Court has already found that such acts do not constitute actionable retaliation, they may nevertheless have provided Plaintiff a reasonable basis to file her EEOC complaints. *See, Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d at 16–17 ("We have indeed held that a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as she can establish that she possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.") (citation and internal quotation marks omitted). Defendant has not argued otherwise. Accordingly, for purposes of this Decision and

---

was the product of retaliation, as opposed to her own conduct. As noted earlier, the Court is required to view the factual allegations from the standpoint of judicial experience and common sense. Although Plaintiff baldly asserts that the disciplinary proceeding against her in February, 2015, was in retaliation for her complaint about coming "face to face" with Rodriguez, judicial experience and common sense suggest that it probably had far more to do with her leaving her office and sitting in the police technician's van in a parking lot for the balance of her shift, during February in Rochester. Although Plaintiff now claims she did not feel safe at police headquarters, it seems far more plausible that her action was intended as a form of protest. It strikes this Court as patently unreasonable for Plaintiff to have acted in that manner, and it is not surprising that she would face discipline as a result of that decision.

Order that Court will assume that the two EEOC complaints were protected activity under Title VII.

The Court is left to consider whether the Proposed Third Amended Complaint plausibly pleads a causal nexus between those EEOC complaints and the alleged retaliation that followed them, and whether it pleads that the alleged retaliation was sufficiently adverse to sustain an actionable claim. As for the first of these issues, the Court finds that the pleading adequately pleads a causal nexus, since it alleges that Plaintiff experienced alleged retaliatory acts very shortly after both EEOC complaints were filed.

As for the second issue, Plaintiff has alleged that the following retaliatory acts occurred after she filed the EEOC complaints: That in or about June, 2016, Coon reassigned her technician call number and vehicle number to other employees within the Technician's Unit; that on July 12, 2016, Coon directed her not to collect evidence at a crime scene and to stand in place; that subsequently Coon did not permit her to work at homicide crime scenes; that Coon gave her the cold shoulder; that Coon scrutinized her requests for overtime more thoroughly than requests submitted by other technicians; that on August 3, 2016, Coon singled her out to be reprimanded for mishandling evidence; that after Plaintiff gave notice that she was not returning to work, due to being constructively discharged, Coon deducted thirty minutes from her final paycheck; and that in or before February, 2017, someone made RPD files containing information concerning her employment dispute with the RPD, including her private personal information, accessible via the internet.

Defendant generally contends that the allegations concerning these particular retaliatory acts are conclusory, and that the acts themselves are not sufficiently adverse to support a retaliation claim. However, when evaluating the sufficiency of a retaliation claim that involves a series of alleged retaliatory acts, the Court must consider the cumulative effect of those acts. *See, Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) ("[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."). Here, Defendant has focused on particular acts, but has not attempted to show that the cumulative effect of the alleged retaliatory acts is insufficiently adverse to support a retaliation claim. Defendant has therefore not demonstrated its entitlement to relief on this point.

Additionally, while Defendant contends that Plaintiff has not plausibly alleged that Defendant was responsible for the dissemination of her personal information, the Court finds that she has plausibly alleged that Defendant is responsible, since the Proposed Third Amended Complaint alleges that Plaintiff found the information "on the City of Rochester's public website."[27]

For all of the foregoing reasons, Defendant's motion to dismiss the retaliation claims is denied to the alleged retaliation occurring after June 7, 2016, but is granted as

---

[27] Proposed Third Amended Complaint at ¶ 88. Defendant contends that Plaintiff has submitted fabricated evidence to the Court. If Defendant is correct, the Court will deal with the matter once a proper evidentiary showing has been made. At this stage, however, the Court must accept the allegations in the Plaintiff's complaint as true.

to the alleged retaliation the occurred prior to that date.

CONCLUSION

Defendant's motion to dismiss the Second Amended Complaint [#15] is denied as moot, while Plaintiff's cross-motion [#19] and Defendant's cross-cross motion [#20] are both granted in part and denied in part. The claims in the Third Amended Complaint are dismissed with prejudice,[28] except the retaliation claim insofar as it is based upon events occurring after June 7, 2016, the date Plaintiff filed her first EEOC complaint.

SO ORDERED.

Dated:    Rochester, New York
          February 11, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[28] Further leave to amend is denied, as this action has already been pending more than a year and Plaintiff has had four opportunities to plead her claims.