UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAULA DAPSON,

                        Plaintiff,

            -vs-                             DECISION AND ORDER

CITY OF ROCHESTER, NEW YORK,        6:17-CV-6704 (CJS)

                        Defendant.

---

Plaintiff Paula Dapson ("Dapson") brought this case pursuant to Title VII and the New York State Human Rights Law alleging a hostile work environment, sex discrimination, and retaliation while and after she was employed by the City of Rochester ("Defendant"). Third Amended Complaint, Dec. 6, 2018, ECF No. 19-2. Of Dapson's original claims, only her retaliation claim pertaining to events that occurred after June 7, 2016, survived Defendant's motion to dismiss. *See* Decision and Order, 33, Feb. 12, 2019, ECF No. 22.

The matter is now before the Court on Defendant's motion for summary judgment. Mot. Summ. J., Nov. 17, 2020, ECF No. 44. Dapson opposed Defendant's motion on January 14, 2021. Resp. Opp'n, Jan. 14, 2021, ECF No. 48. Defendant did not file a reply.

For the reasons stated below, Defendant's motion for summary judgment [ECF No. 44] is granted.

## BACKGROUND

Given that Defendant's statement of facts presents mostly procedural history and argument—rather than facts[1]—and that employment-related retaliation claims are heavily fact dependent, the Court provides only a few of the necessary background facts and broad allegations here and reserves recitation of the more substantive factual allegations to its analysis of the claim.

Dapson was employed by Defendant as an Evidence Technician for the Rochester Police Department. In June 2016, Dapson filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") about what she perceived as retaliation by Defendant. Pl. Statement, ¶ 13.1, Jan. 14, 2021, ECF No. 48-1; *see also* EEOC Charge, Jan. 14, 2021, ECF No. 48-6 ("EEOC Complaint").

Then, after returning from a medical leave on June 28, 2016, Dapson alleges that Defendant, mostly through her supervisor Sergeant Michael Coon: 1) reassigned her call number; 2) changed her work assignments; 3) denied her discretionary overtime; 4) isolated and excluded her; 5) subjected her to heightened scrutiny and increased surveillance; 6) treated her less favorably than other co-workers; and (7) disciplined her differently than other coworkers. *See* Pl. Statement, ¶ 13.2. She provided notice of her resignation on September 21, 2016. *See* Pl. Resignation, Jan. 14, 2021, ECF No. 48-17.

---

[1] This violates the Court's local rule requiring a moving party to provide a list of material facts followed by citation to admissible evidence. L. R. Civ. Pro. 56(a)(1).

During this time frame, Dapson also alleges that an individual who previously sexually harassed her, Officer Rodriquez, was given a temporary and then permanent promotion that would guarantee that their work shifts would overlap.[2] *See* Pl. Statement, ¶¶ 13.16, 13.21.

Dapson also alleges that in February 2017, when she was no longer employed by Defendant, she discovered that documents relating to her EEOC claims, including personally identifying information, were publicly accessible on the internet. *Id.* ¶ 13.26; Pl. Aff., ¶ 19, Jan. 14, 2021, ECF No. 48-4.

## SUMMARY JUDGMENT STANDARD

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party"). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, "[a] party asserting that a

---

[2] Dapson's claims that involved Officer Rodriquez were severely curtailed by this Court's Decision and Order on Defendant's motion to dismiss. For the purposes of the present motion, it is relevant to note that Defendant was aware of Dapson's allegations against Officer Rodriguez and that Defendant issued him a no contact "order" on October 25, 2011. *See* Officer Eliud Rodriguez Stay Away Order, Jan. 14, 2021, ECF No. 48-18. This "ordered" him to stay away from Dapson's home and avoid contact with her at the Rochester Police Department Technician Unit. *Id.*

fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record, or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

Courts must view the underlying facts contained in affidavits, attached exhibits, and depositions, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

Retaliation under Title VII and New York Law

Retaliation claims under both Title VII and the New York Human Rights Law are governed by the same three-step burden-shifting framework. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). First, the plaintiff has a minimal or *de minimis* burden to show: 1) participation in a protected activity; 2) that the defendant

knew of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and adverse employment action. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). As to the fourth element, "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* If this burden is met, "a presumption of retaliation arises." *Id.*

Then, the burden shifts to the defendant "to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If it does, the presumption dissipates. *Id.*

Last, the burden shifts back to the plaintiff to show that retaliation was a "substantial reason for the adverse employment action." *Id.* In other words, "Title VII is violated even if there were objectively valid grounds" for the adverse employment action so long as the employer was motivated in part by retaliatory animus. *Hicks v. Baines*, 593 F.3d 159, 164-65 (2d Cir. 2010).

Defendant has not challenged that the EEOC Complaint Dapson filed was protected activity. Therefore, the Court need only analyze the remaining elements.

Knowledge of the Protected Activity

As evidence that Defendant knew of the EEOC Complaint, Dapson cites to a letter from the EEOC that states it is required to send a copy of the charge to Defendant within ten days of receipt. *See* Pl. Mem. of Law, 14, Jan. 14, 2021, ECF No. 48; EEOC Complaint at 3.

Defendant admits that Coon knew generally that Dapson filed the EEOC Complaint but argues that Coon did not participate in any of the investigations or have direct knowledge of the facts alleged in the EEOC Complaint. Def. Mem. of Law, 6, Nov. 17, 2020, ECF No. 44-7.

Defendant cites no caselaw for the proposition that the agent alleged to have carried out the adverse action must have in-depth knowledge of the protected activity. In fact, the Second Circuit has stated: "Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice. Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." *Papelino v. Albany Coll. of Pharm.*, 633 F.3d 81, 92 (2d Cir. 2011) (internal quotation marks and citations omitted); *see also Barnett v. Nat'l Passenger Railroad Corp.*, No. 17 Civ. 2682, 2018 WL 6493098, at *11 (S.D.N.Y. Dec. 10, 2018) ("Corporate knowledge is generally found in situations where the existence of protected activity is communicated directly to, and acknowledged by, a defendant's officer. For example, where a non-decisionmaker receives a copy of plaintiff's complaint or direct email stating that a complaint has been filed against the institution." (internal citations omitted)). As such, there is more than sufficient evidence in the record to establish this element of Dapson's claim.

Adverse Actions, Proffered Legitimate Reasons, and Pretext

Because there are no "bright-line rules" delineating when a challenged employment action "reaches the level of adverse," "courts must pore over each case" to make this determination. *Jute*, 420 F.3d at 178 (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)). As a guiding principle, the alleged adverse action must be material—that is, "Title VII does not protect an employee from all retaliation, but only retaliation that produces an injury or harm." *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 24-25 (2d Cir. 2014) (internal quotation marks and citation omitted). Said differently, a plaintiff must show that the challenged action "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 25 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In contrast, "trivial harms," "petty slights, or minor annoyances that often take place at work and that all employees experience" are not sufficiently or materially adverse. *Id.* (internal quotation marks and citation omitted).

"[I]f the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552-53 (2d Cir. 2010). "The employer need not prove by a preponderance of the evidence that the reasons for his action were not discriminatory, but may simply present clear and specific reasons for the action."

*Gonzalez v. City of New York*, 442 F. Supp. 3d 665, 687 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).

A plaintiff must then satisfy her final burden by providing a "sufficient basis for a trier of fact to doubt the persuasiveness of [the defendant's] proffered evidence and ultimately to find that the legitimate, non-retaliatory reasons offered by [the defendant] were pretextual." *Jute*, 420 F.3d at 180 (cleaned up). "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. However, a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) (citation omitted); *see also Singer v. New York City Health & Hosps. Corp.*, 18-CV-6356, 2020 WL 2933670, at *4 (E.D.N.Y. June 2, 2020) ("A discrimination claimant may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (internal quotation marks and citation omitted)).

*Reassignment of Call Number and Vehicle*

Dapson alleges that she was retaliated against when her call number was reassigned while she was on medical leave. Pl. Mem. of Law at 15. The parties have slightly different interpretations of a "call number." Coon explained that a call

number is a three- or four-digit number, and the various digits indicated the car in the technician's unit, the platoon, and the order in which cars would take a call. Coon Depo., 29:19-25—30:2-25, Nov. 17, 2020, ECF No. 44-2. He stressed that call numbers were assigned to vehicles and not to people, *id.* at 29:15-17, whereas Dapson states that "technicians had designated call numbers [and] that the numbers are distinctive and identify specific individuals." Pl. Aff., ¶ 14, Jan. 14, 2021, ECF No. 48-4.

In any event, Dapson argues that for more than seven years she had only been assigned two numbers and that her colleagues recognized her by her call number. Pl. Mem. of Law at 15. She argues that after returning from medical leave June 28, 2016, she discovered that her number had been reassigned to a new employee and she was assigned a "floater" number meaning that she received different numbers and car assignments depending on the shift. *Id.* She argues that reassigning the number was retaliatory and that such a change was unprecedented—she knows of no other instance where an individual on medical leave was stripped of their numbers, and she was not given the courtesy of being informed of the change. *Id.* at 15-16.

Defendant argues that that Dapson has not produced any evidence that the reassignment had any meaningful effect on her job, Def. Mem. of Law at 3, and while Dapson has a *de minimis* burden, the Court agrees—the reassignment of a call number is not a materially adverse change. The Court finds this analogous to a reassigned office space. If someone has had a certain office for a period of time, the office itself may become recognizable as "belonging" to that employee, and that employee may feel a sense of ownership of that space. Surely any change to that would

present an inconvenience and may subjectively be frustrating. But the change must be "more disruptive than a mere inconvenience," "an alteration of job responsibilities," or a "petty slight[] or minor annoyance[]." *Naemit v. Vill. of Spring Valley*, No. 20 CIV. 1882, 2022 WL 1443675, at *8 (S.D.N.Y. May 6, 2022) (internal quotation marks and citations omitted); *see also Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (noting that plaintiff cannot premise a retaliation claim on office moves or the type of vehicle she was assigned); *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 481 (S.D.N.Y. 2013) (noting that "decisions concerning the assignment of vehicles are not adverse employment actions"). Therefore, this Court concludes that the changes to her call number do not constitute material adverse employment action.

*Reassignment of Homicide Cases*

Dapson argues that upon returning from her medical leave, she was kept from working homicide scenes. Pl. Mem. of Law at 16. She states that they were an important aspect of her job, and that this limited her access to overtime. *Id*. She also states that in July 2016, Coon told her to cease working a homicide scene "under the admitted assumption she was 'flirting' with a colleague but he later admitted he does not know in fact that she and her colleague were 'flirting.'" Pl. Statement, ¶ 13.3.

A change of assignments does not always constitute an adverse employment action. Instead, the change "must be accompanied by a material detriment to an employee's working conditions." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014); *see Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) (concluding that changes in job responsibilities and underutilization

of skills are not adverse unless accompanied by materially adverse changes in employment such as demotion or loss of wages). Here, Dapson has stated that the change in types of cases she was assigned to limited the amount of overtime she could work. Assuming this is true for the purposes of this motion, the alleged restriction of homicide work could possibly constitute an adverse material action.

However, Dapson has done little more than make conclusory statements about this alleged change in work assignments. Her affidavit submitted in opposition to this motion simply lists a "change in work assignments" one of the many alleged retaliatory tactics. Pl. Aff., ¶ 13. In response to Defendant's explanation for the July 12, 2016 incident, she states that "Sgt. Coon describes the wrong scene from which Plaintiff was removed and provides a false narrative of what occurred." *Id.*, ¶ 14. She otherwise, though, fails to provide any details or specifics regarding her version of events, thereby failing to create a material issue of fact. *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010) ("Plaintiffs' affidavits on this point lack specifics and are conclusory; a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove."). Therefore, Dapson has failed to meet her initial burden as to this alleged adverse employment action as well.

*Isolation*

Dapson alleges that Coon ignored her and refused to respond to her emails or speak with her unless she was being reprimanded. Pl. Mem. of Law at 6. Dapson also argues that she was isolated when her call number was reassigned. *Id.* at 17. Dapson

further alleges that nothing was done after she was interviewed about her complaints of retaliation. *Id.* at 7.

Defendant argues that cold shoulder treatment is not legally sufficient to sustain a retaliation claim, and the Court agrees. Def. Mem. of Law at 6. "Courts have held that merely being given the proverbial cold shoulder by one's coworkers . . . is not enough to show that one has suffered an adverse employment action." *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013) (noting also that "being left out of meetings does not amount to an adverse action, absent a showing that some additional negative consequences flowed from that exclusion").

Furthermore, the Second Circuit has held that "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010); *see also Scoppettone v. Mamma Lombardi's Pizzico, Inc.*, 523 F. App'x 73, 75-76 (2d Cir. 2013) (employer's negligent investigation of coworker could not support retaliation claim). Therefore, Dapson has again failed to meet her burden with respect to these allegations.

*Increased Scrutiny*

Dapson alleges a variety of instances in which she claims she was subjected to hyper-scrutiny that none of her colleagues endured. Pl. Mem. of Law at 16. For example, Dapson alleges that on August 3, 2016, Coon wrote her up for an issue relating to evidence handling. *Id.* at 7. Around the same time, he scrutinized and

questioned her overtime slips, which continued through the remainder of her employment. *Id*. Dapson also points to the fact that she was initially deducted 30 minutes of time from her final paycheck because Coon alleged that she had an unauthorized absence for the final 30 minutes of her last shift. *Id.* at 17. Dapson argues that the fact she ultimately received pay for this time shows that she did not leave work early. *Id.* at 17-18.

Defendant argues that allegations that Dapson was micromanaged constitutes "trivial harm" that cannot violate Title VII. Def. Mem. of Law at 6. Again, the Court agrees. "Excessive scrutiny, without more, does not constitute an adverse employment action." *Hill*, 467 F. Supp. 2d at 355 (collecting cases); *see also Faina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) ("While negative employment evaluation letters or reprimands may be considered adverse employment actions," that is not the case where there is "no proof that [the] evaluation had any effect on the terms and conditions of [the plaintiff's] employment." (internal quotation marks and citation omitted); *Rivera*, 743 F.3d at 26 (concluding that where two citations reflected enforcement of preexisting disciplinary polices, "no reasonable jury could conclude that these acts of discipline, either alone or in conjunction with the other acts of retaliation [the plaintiff] alleges, represented a departure from [the employer's] normal disciplinary practices, such that they might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (internal quotation marks and citation omitted)); *Richards v. Dep't of Educ.*, No. 21-cv-338, 2022 WL 329226, at *8 (S.D.N.Y. Feb. 2, 2022) ("Although a

reprimand can constitute an adverse employment action, courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." (internal quotation marks and citation omitted)).

Even assuming arguendo that these allegations rose to the level of material adverse employment action, Defendant has rebutted the presumption by pointing to non-retaliatory reasons for Coon's actions. Specifically, Coon testified that Dapson had violated policy by not turning in firearm and ballistic evidence to the property clerk and crime lab by the end of her shift, and that the evidence was left out for at least two days. Coon Dep. at 50:10-25—51:2-20. Coon also testified that Dapson's overtime slips were "questioned" or "scrutinized" because she failed to attach the required supporting documentation. *Id.* 22:12-25—23:2-4. And he testified that he observed her, after handing him a letter of resignation, leave the building 30 minutes before her shift ended, enter her car, and leave the grounds.[3] *Id.* at 66:15-25—67:2-7.

In response, Dapson has failed to satisfy her burden to show that retaliation was a substantial reason for these actions. While she may be able to point to the

---

[3] Dapson asserts that she did not miss the last 30 minutes of her final shift, "as can be gleaned by the fact that she was admittedly paid for that last 30 minutes of her final shift." Pl. Statement, ¶ 13.24. This conclusory statement does not create a material issue of fact, and it is not the Court's duty—especially when a party is represented—"to scour the record on its own in a search for evidence." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (internal quotation marks and citation omitted). The same is true as to her broad allegation that her colleagues were not subjected to the same level of scrutiny.

temporal proximity between these events and her EEOC Complaint, caselaw clearly establishes this is insufficient to establish pretext. *See Zann Kwan*, 737 F.3d at 847.

### Denied Discretionary Overtime

In her briefing, Dapson makes passing reference to being deprived discretionary overtime when her shift would overlap with Officer Rodriguez despite the fact that other technicians were allowed large amounts of discretionary overtime. *See, e.g.*, Pl. Mem. of Law at 6.[4]

In addition to being conclusory, Dapson's own argument cuts against her. By stating that she was deprived discretionary overtime because it would overlap with Officer Rodriguez's shifts, she admits that any alleged denial was for a non-retaliatory reason. Furthermore, as noted in this Court's prior Decision and Order, Dapson previously asserted that she was subjected to a hostile work environment when she "work[ed] 'in proximity' to Rodriguez, meaning the same building as him, which resulted in her having to walk near where he was working, and which also resulted, on one occasion, of seeing him 'face to face.'" Decision and Order at 20. She states that she resigned (or was constructively discharged) on the day she discovered that Officer Rodriguez was promoted, which had "guaranteed" that their shifts would overlap. Pl. Mem. of Law at 8. In light of Dapson's aversion to working at the same

---

[4] In her affidavit, she asserts that Coon admitted to not paying "verified overtime slips even though he explained the procedure and confirms that Plaintiff followed proper procedure." Pl. Aff., ¶ 14. That simply is not true. The pages of Coon's deposition cited are either unrelated to this claim or refer to another overtime slip dispute regarding which Coon provided a number of reasons why he did not approve the time. *See* Coon Depo., at 61-62, 66-67.

time as Officer Rodriguez and the claims Dapson has lodged against Defendant when they have, the Court finds disingenuous Dapson's argument that it was retaliatory for Defendant to not offer discretionary overtime when it would overlap with Officer Rodriguez's shifts.

*Public Access to Personnel File*

Dapson alleges that documents from her personnel file, including publicly identifying information and documents relating to her EEOC claims, were on Defendant's unsecured server such that they were publicly accessible through Google without a password.[5] Pl. Aff., ¶ 20. She states that she was the only person whose personal information, including her social security number, address, cell phone number, and date of birth, was exposed. *Id.* Dapson points to a letter from Defendant that admitted that it was aware, as of March 2017, that "documents concerning Ms. Dapson and allegations she was making concerning RPD criminal investigations procedures" were accessible on the internet and that Defendant had contacted Google to take down the documents. Aff. of Kimberly A. Glennon, 5, Jan. 14, 2021, ECF No. 48-9.

The Court concludes that Dapson has failed to meet her *prima facie* burden that the records were made publicly available for a retaliatory purpose. Dapson states that she has established the approximate time period of the publication, Pl. Aff., ¶ 22, but the record does not support this. Dapson may have established a temporal

---

[5] The URL that brought a viewer to the documents was download.cityofrochester.gov. *See* Def. Mem. at 9-10; Pl. Mem. at 19.

proximity between her EEOC Complaint and the *discovery* of the unsecured nature of her records. But there is nothing in the record to suggest that the documents were not publicly available prior to her filing of the EEOC Complaint. Dapson's expert states that the files were publicly available "*at least* as far back as 12/24/2016," Expert Report, 5, Jan. 14, 2021, ECF No. 48-8 (emphasis added), leaving open the possibility that they were publicly available prior to June 2016.

In her affidavit responding to Defendant's statement of facts, Dapson claims that she "lacks the authority or ability to investigate this detrimental leak of privileged investigatory and personal information." Pl. Aff., ¶ 22. But that is the purpose of discovery—to uncover evidence that can be used at trial to satisfy one's burden. Ultimately, Dapson has failed to point to any evidence from which a reasonable jury could determine that her records were published after the filing of the EEOC Complaint, and therefore, she has failed to meet her *prima facie* burden regarding a retaliatory purpose. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) (grant of summary judgment is appropriate where "the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true").

*Retaliatory Hostile Work Environment*

Dapson argues that considering these events collectively, she was subjected to a retaliatory hostile work environment. Pl. Mem. of Law at 21-23. She argues that she has presented examples of "objectively and subjectively outrageous and offensive forms of harassment on the job" and that a reasonable jury could conclude that such

treatment was "'sufficiently severe or pervasive to alter the conditions of her employment and created an abusive working environment.'" *Id.* at 23 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).

This Court acknowledged in its Decision and Order on Defendant's motion to dismiss that a retaliatory hostile work environment may constitute an adverse employment action. Decision and Order at 22; *see also Hicks*, 593 F.3d at 165 (2d Cir. 2010) ("[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation may be sufficiently 'substantial in gross' as to be actionable."). Defendant has continued to ignore this theory of the case. *See* Decision and Order at 32 (noting that Defendant "has focused on particular acts, but has not attempted to show that the cumulative effect of the alleged retaliatory acts are insufficiently adverse to support a retaliation claim. Defendant has therefore not demonstrated its entitlement to relief on this point."); Pl. Mem. of Law at 21 ("Defendant conveniently sidesteps the issue of whether in the aggregate, the examples of retaliation, together, constitute actionable retaliation."). Therefore, the Court would be inclined to allow this claim to proceed.

However, the only alleged adverse actions that could contribute to this theory are Dapson's claims about the reassignment of her call number and isolation,[6] and even considered collectively, these allegations are insufficiently adverse. *See Sclafani*

---

[6] The remaining challenged actions were dismissed because she either stated them in a conclusory fashion or was unable to meet her burden of proof regarding retaliatory motive.

*v. PC Richard & Son*, 668 F. Supp. 2d 423, 438-39 (E.D.N.Y. 2009) ("In order to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct."). Changes to Dapson's call number and Coon's "cold shoulder" are not "sufficiently severe or pervasive to alter the conditions of [her] employment," *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015), nor would they "dissuade[] a reasonable worker from making or supporting a charge of discrimination," *see Rivera*, 743 F.3d at 25 (internal quotation marks and citation omitted). Therefore, the Court cannot allow this claim to proceed to trial.

## CONCLUSION

Consistent with the foregoing, it is hereby

ORDERED that Defendant's motion for summary judgment [ECF No. 44] is granted and Dapson's claims against Defendant are dismissed. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

DATED: June 28, 2022
Rochester, New York

                                                       CHARLES J. SIRAGUSA
                                                       UNITED STATES DISTRICT JUDGE